**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**EDWARD J. HEELAN, JR.,**

                              **Plaintiff,**

**-against-**                                                    **05-CV-0507**

**GLENN S. GOORD, in his official and**
**individual capacity as Commissioner**
**of the New York State Department of**
**Correctional Services; and GARY FILION,**
**in his official and individual capacity**
**as former Superintendent of Coxsackie**
**Correctional Facility,**

                              **Defendants.**

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I.  INTRODUCTION

Plaintiff Edward J. Heelan, Jr., a former Correctional Officer with the New York

State Department of Correctional Services, commenced this action pursuant to 42 U.S.C.

§ 1983 alleging violations of his First and Fourteenth Amendment rights. He seeks

monetary damages as well as declaratory and injunctive relief based on his allegations

that certain DOCS workplace regulations violated his constitutional rights.  The central

facts of the case are not in dispute, and both Plaintiff and Defendant[1] cross-move for

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

[1] As indicated in the caption, Plaintiff brought claims against Glenn S. Goord and Gary Filion.  However, the
(continued...)

summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons that follow,

Defendant's motion is granted and the action is dismissed.

## II.  BACKGROUND

From 1983 until 2004, Plaintiff was employed as a Correctional Officer ("CO") with

the New York State Department of Correctional Services ("DOCS"). Def. Stat. of Mat.

Facts ("Def. SOMF") ¶¶ 3-7.  All COs are bound by certain employee rules designed to

promote the safety and security of the prisons, including rules prohibiting unauthorized

relationships with inmates and ex-inmates and requiring COs to report contacts between

themselves and inmates and ex-inmates. Id. ¶¶ 15-16.  In 1993, Plaintiff formed a music

recording and producing business called "High Wire Records." Id. ¶ 8.  In his business,

Plaintiff contracted with musical performers, at least some of whom had been convicted of

felonies in New York and had served time in DOCS prisons. Id. ¶¶ 10-11. Although

Plaintiff was aware of the DOCS regulations and of the criminal histories of his clients, he

did not notify DOCS officials of his business or of his contacts with these individuals. Id. ¶¶

4-5, 9, 12.

On December 24, 2002, with his attorney present, Plaintiff was interviewed by the

DOCS Inspector General regarding an investigation into Plaintiff's violations of DOCS'

employee rules. Id. ¶ 13.  On December 26, 2002, the DOCS Office of Labor Relations

served Plaintiff with a Notice of Discipline ("NOD").  The NOD alleged, *inter alia*, that

Plaintiff maintained improper relationships with inmates and former inmates and that he

---

[1](...continued)
parties previously stipulated to dismiss all claims against Defendant Filion, and the dismissal was ordered by the Hon. David R. Homer, United States Magistrate Judge. See Jan. 24, 2006 Stip & Order [dkt. # 16]. Hence, Defendant Glenn S. Goord is the sole defendant remaining in this case.

failed to report a series of contacts with inmates and former inmates in violation of DOCS

Employee Manual §§ 2.7,[2] 2.14,[3] and 2.15.[4]  On December 26, 2002, DOCS notified

Plaintiff of its intent to dismiss him from his employment as a CO for the reasons stated in

the NOD.

Pursuant to the terms of the applicable Collective Bargaining Agreement ("CBA"),

Plaintiff grieved the NOD and sought formal binding arbitration.  An arbitration hearing was

scheduled to address the charges levied in the NOD, but on March 11, 2003, prior to this

arbitration taking place, Plaintiff filed suit in this court alleging that the disciplinary

regulations cited above violated his rights secured under the First and Fourteenth

Amendments to the United States Constitution. See Compl., dkt # 1, in Heelan v. Goord,

03-CV-0292 (N.D.N.Y.)("Heelan I").[5]  The defendant in Heelan I, "Glenn S. Goord in his

official capacity as Commissioner of [DOCS]," moved to dismiss that action arguing, *inter

alia*, that the Court should abstain under the doctrine set forth in Younger v. Harris, 401

U.S. 37 (1971). See Def. Mot. to Dismiss, dkt. # 6 in Heelan I. The arbitration hearing was

---

[2]   Section 2.7 prohibits affiliations with organizations that "will place [a CO's] personal interest or interest as a member of such group in conflict with or otherwise interfere with the impartial and effective performance of his duties as an employee."

[3]   Section 2.14 prohibits, without the express consent of the Commissioner or his designee, (a) the acceptance of gifts, gratuities, and other considerations from or on behalf of inmates or former inmates, and (d) the giving or extending to any inmate or parolee any favor or privilege.

[4]   Section 2.15 prohibits, without the express consent of the Deputy Commissioner or his designee, (a) association with "criminals or persons engaged in unlawful activities," and (b) engaging in any "conversation, communication, dealing, transaction, association, or relationship with any inmate, former inmate, parolee, or former parolee ... which is not necessary or proper for the discharge of the employee's duties."

[5]   In Heelan I, Plaintiff contended that Sections 2.7, 2.14 and 2.15 of the DOCS Employee Manual were void for vagueness, (compl. ¶¶ 42-50);  unduly over broad, (compl. ¶¶ 51-63);  violate his rights of freedom of speech and free association (compl. ¶¶ 64-78), and deprive him of rights to enter contracts "on the basis of race because of the plaintiff's affiliation with artists of African-American descent" in violation of his rights secured by the Equal Protection Clause. Comp. ¶¶ 79-86.

postponed by agreement of the parties pending the determination of Defendant's motion to dismiss. See Dec. 27, 2003 Decision & Order, dkt. # 16 in Heelan I.

After a searching inquiry to determine whether a state judicial forum was available to review Plaintiff's constitutional challenges if the Court abstained, the Court determined that such a forum was available. See Dec. 27, 2003 Decision & Order, Heelan I, pp. 4-14. In this regard, the Court found that even though the governing CBA otherwise prevented state court review of the substantive merits of an arbitrator's decision, New York law allowed state court review of an arbitration decision that resulted in a violation of a grievant's constitutional rights. See Dec. 27, 2003 Decision & Order at pp. 9-13 ("While the terms of the CBA may bar the arbitrator from considering Plaintiff's defenses based on constitutional and statutory authority, and while the terms of the CBA and the law in the State of New York may bar a review of the substantive merits of the arbitrator's determination, the New York Court of Appeals has made clear that even when the parties have contracted for final and binding arbitration, a court may vacate an arbitral award 'when it violates a strong public policy ... embodied in constitutional, statutory or common law [that] prohibit a particular matter from being decided or certain relief from being granted by an arbitrator.'")(quoting Matter of New York State Correctional Officers & Police Benevolent Assn., 94 N.Y.2d at 326-27; and citing United Federation of Teachers, Local 2, AFT,  AFL-CIO v. Board of Educ. of City School Dist. of City of New York, 2003 WL 22725405, at * 2003 N.Y. Slip Op. 18511 (N.Y., Nov. 20, 2003)(same); Matter of New York City Tr. Auth. v Transport Workers Union of Am. Local 100, AFL-CIO, 99 N.Y.2d 1, 9-11 (2002) (establishing a two-prong test for determining whether an arbitration award violates public policy); Matter of Port Jefferson Sta. Teachers Assn. v. Brookhaven-Comsewogue

Union Free School Dist., 45 N.Y.2d 898, 899 (1978)(a binding arbitration award may be set side "when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility."). Accordingly, the Court abstained under Younger and dismissed the action. Id.

After abstaining, the underlying disciplinary proceeding then went forward. Before the arbitration commenced, the parties entered a stipulation that provided: "The grievant will pursue arbitration. If he does not get the relief sought in that forum, he may then go back to Federal Court." April 13, 2004 Arbitration Award, p. 4. "At his February 19, 2002 arbitration hearing the plaintiff did not controvert the material allegations underlying the charges contained in the NOD; rather, plaintiff's defense at his arbitration was based upon the challenges to DOCS employee rules which he pursues in this action." Def. SOMF ¶ 25. The arbitrator "considered, and rejected, plaintiff's facial and 'as applied' challenges to DOCS rules." Id. ¶ 28; see April 13, 2004 Arbitration Award, pp. 14-16. Plaintiff was found guilty of engaging in "unauthorized associations in violation of Manual § 2.15 and had unjustifiably failed to report inmate contacts to his employer." Def. SOMF ¶ 27 (citing, inter alia, the April 13, 2004 Arbitration Award). The arbitrator found that the proper penalty under the circumstances was termination, and, given that determination, Plaintiff was then formally discharged by DOCS. Id. ¶ 29. There is no indication that Plaintiff made any attempt to obtain state court review of the arbitrator's decision.

On April 26, 2005, Plaintiff commenced the instant action asserting the same constitutional violations with regard to the DOCS Employee Manual as asserted in Heelan I, and requesting declaratory and injunctive relief as well as monetary damages. See Compl. [dkt. # 1]; fn. 5, supra. As noted in the caption, Plaintiff brings claims against

5

Commissioner Goord in both his individual and official capacities.

## III. DISCUSSION

### a.  Jurisdiction to address constitutional challenges to the DOCS Employee Manual

First, although not raised by the parties, the Court raises *sua sponte* the question whether the abstention decision in Heelan I divests the Court of jurisdiction to adjudicate Plaintiff's current claims that the challenged provisions of the DOCS Employee Manual violate his constitutional rights.  See Thompson v. New York Cent. R. Co., 361 F.2d 137, 144-45 (2d Cir.1966) ("[T]he District Court ... is duty bound to ... *sua sponte* [raise the question of jurisdiction ] whenever it appears that jurisdiction ... is lacking."); Rohrer v. FSI Futures, Inc., 981 F. Supp. 270, 276 (S.D.N.Y. 1997) ("[A]ll parties may agree among themselves that the district court has subject matter jurisdiction, but the courts, trial and appellate, are obligated to consider the matter *sua sponte.*"). The Court finds that it does and that, therefore, jurisdiction is lacking.

When the Court abstained under Younger in Heelan I and dismissed Plaintiff's constitutional challenges, it declined to accept jurisdiction over that dispute. See Spargo v. New York State Com'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003)("Younger generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.")(interior quotes and citations omitted).  The decision was based on the fundamental doctrine of federalism that recognizes the dual equal sovereigns of the federal and state courts, and on the fundamental principal of comity that recognizes that the state court is the arena where, if possible, constitutional challenges to important state

6

interests should be addressed. See New Orleans Public Serv., Inc. v. Council of New

Orleans, 491 U.S. 350, 364 (1989)(Younger abstention is rooted in principles of comity

and federalism, and was designed to recognize a "proper respect for state

functions.")(quoting Younger, 401 U.S. at 44); see Spargo, 351 F.3d at 74-75.[6]  The

dismissal was "without prejudice" to signify that the Court had not issued a decision on the

merits and to allow Plaintiff to raise his constitutional challenges in state court - not to

allow him to re-institute the matter in this Court at some later time.

    While the parties might have originally been permitted to waive Younger abstention

and proceed with the dispute in this court, see Ohio Civil Rights Comm'n v. Dayton

Christian Sch., Inc., 477 U.S. 619, 626 (1986), once Younger abstention was requested

and granted, jurisdiction to adjudicate Plaintiff's constitutional challenges was

extinguished.  At that point, Plaintiff had one of two options.  He could either have

appealed the abstention decision to the Second Circuit Court of Appeals, or he could have

pursued his constitutional challenges in New York state court. Having failed to appeal the

---

[6] The Second Circuit explained in Spargo:

As the Supreme Court emphasized in Younger v. Harris, 401 U.S. 37, 43-45, 91 S.Ct. 746 (1971), federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings.  This principle of abstention is grounded in interrelated principles of comity and federalism. See Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir.1999). Both considerations require federal courts to be "cognizant that 'the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" Younger, 401 U.S. at 44. "Our Federalism" in its ideal form, as the Supreme Court explained in Younger, strives towards "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. . . . Giving states "the first opportunity ... to correct their own mistakes" when there is an ongoing state proceeding serves the vital purpose of "reaffirm[ing] the competence of the state courts," and acknowledging the dignity of states as co-equal sovereigns in our federal system.  Id. at 200.

351 F.3d at 74-75.

Court's <u>Younger</u> abstention decision, that decision became final.

Plaintiff cannot now do an end run around that determination by entering a stipulation designed to overrule the prior declination of jurisdiction and simply assert the rejected claims under a different caption. The parties' subsequent stipulation to allow Plaintiff to "go back to Federal Court" if he "[did] not get the relief sought" in arbitration does not bind this Court. <u>See</u> <u>Mehlenbacher v. Akzo Nobel Salt, Inc.</u>, 207 F.Supp.2d 71, 75 (W.D.N.Y. 2002)("[I]t is axiomatic that the parties cannot agree between themselves and stipulate to jurisdiction in federal court.")(citing cases). To allow the constitutional challenges to go forward in this court without even an attempt to litigate the claims in state court would make a mockery of the Court's <u>Younger</u> abstention decision and would be antithetical to the notions of federalism and comity upon which that decision was based. Accordingly, the Court finds that Plaintiff's challenges to the constitutionality of DOCS' employee regulations must be dismissed for lack of jurisdiction.

**b. Collateral Estoppel**

Further, the Court finds that adjudication of Plaintiff's constitutional challenges are barred by the doctrine of collateral estoppel. Defendant does not directly raise collateral estoppel but does raise it indirectly within the context of his Rooker-Feldman argument. <u>See</u> Def. Mem. L. pp. 11-13. This provides a sufficient basis to address the issue *sua sponte*. <u>See</u> <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 331 (2d Cir. 2003).[7]

---

[7] In <u>Curry</u>, the Second Circuit noted that:

> [W]e have previously upheld a district court's dismissal of a case on collateral estoppel grounds even where collateral estoppel was not raised as an affirmative defense in the answer, but was raised by the district court *sua sponte,* without permitting the party against which it was asserted an opportunity to

(continued...)

While the Rooker-Feldman doctrine does not apply because Plaintiff never sought state court judicial review of his constitutional challenges, see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)(The Rooker-Feldman doctrine only applies when a plaintiff complains in federal court of injuries that are caused by a state-court judgment); Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)("A federal suit complains of injury from a state-court judgment . . . when the [complained of] actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."); see also Verizon Md., Inc. v. PSC, 535 U.S. 635, 644 n. 3 (2002)("[Rooker-Feldman] has no application to judicial review of executive action, including determinations made by a state administrative agency."), the Court may nonetheless determine whether collateral estoppel applies. See Hoblock, 422 F.3d at 85 ("Exxon Mobil teaches that Rooker-Feldman and preclusion are entirely separate doctrines.").

> Under New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate.

Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 109 (2d Cir. 2002) (internal citations and quotation marks omitted). "Additionally, the issue that was raised previously must be

---

[7](...continued)
argue the issue.  See Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir.1998) ("Although the district court raised the issue of collateral estoppel *sua sponte*, this decision does not require reversal.").  In so doing, we relied on "the strong public policy in economizing the use of judicial resources by avoiding relitigation." Id.

316 F.3d at 331.  In the instant case, Defendant raised the issues of collateral estoppel and res judicata in the context of the Rooker-Feldman argument with sufficient particularity to allow Plaintiff an opportunity to respond. Thus, the Court finds it appropriate to address the issue. See Id.

decisive of the present action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002)(internal citation and quotation marks omitted).

The first requirement, that the issue being raised in the present case is identical to an issue that has already been decided, is satisfied. Curry, 316 F.3d at 331.  Plaintiff raised the identical constitutional challenges as raised here in his arbitration proceeding. Def. SOMF ¶ 25.  The arbitration proceeding constitutes a prior adjudication for purposes of collateral estoppel. See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)(collateral estoppel applies to arbitration decisions).

The second requirement, "that the party against whom estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior proceeding," has also been satisfied in this case. Curry, 316 F.3d at 332.  As the Second Circuit has stated:

> In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001)(quoting Schwartz v. Public Adm'r, 24 N.Y.2d 65, 72 (1969)).  Plaintiff was represented by counsel at the arbitration hearing and was "afforded a full opportunity to adduce evidence, cross-examine witnesses, and make argument in support of [his] . . . position[]."  April 23, 2004 Arbitration Award, p. 1.  Further, Plaintiff had a strong "incentive and initiative to litigate" the constitutionality of the relevant portions of the DOCS Employee Manual in light of the fact that this was his only defense to the NOD that sought

10

his discharge from the employment he held for nearly twenty years. Hickerson v. City of New York, 146 F.3d 99, 109 (2d Cir. 1998). Thus, "[t]he opportunity was clearly there." Curry, 316 F.3d at 332. Plaintiff had a full and fair opportunity to litigate the constitutionality of the DOCS' employee regulations, both facially and "as applied," before the Arbitrator.

Finally, the issues that were raised previously are decisive of all claims in the present action. "[A]n issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." Id. The Arbitrator found against Plaintiff on all of his constitutional challenges to pertinent sections of the DOCS Employee Manual. The determination that there did not exist a constitutional violation by application of the challenged provisions, or on the face of the challenged provisions, is decisive of all of Plaintiff's Section 1983 claims in this action. That is, according the Arbitrator's decision collateral estoppel effect, the claims for injunctive and declaratory relief based on Plaintiff's constitutional challenges to the DOCS Employee Manual, and the claims for monetary damages based upon those challenges, fail as a matter of law. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)("In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.").

**c. Claims seeking monetary damages**

To the extent that the claims for monetary damages create a  case or controversy

not barred by the Younger abstention decision or by collateral estoppel, the claims are independently subject to dismissal.  First, all claim for damages against Defendant Goord in his official capacity are, in essence, claims against the State of New York.  See Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997)("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer. . . .")(citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); Aiken v. Nixon, 236 F. Supp.2d 211, 226-28 (N.D.N.Y. 2002)(A claim for monetary relief against the State of New York, one of its agencies, or a state official acting in an official capacity, is a claim against the State of New York), aff'd 80 Fed. Appx. 146, 2003 WL 22595837 (2d Cir. Nov. 10, 2003).  Inasmuch as New York has not waived its immunity from a Section 1983 damages award, that much of the case seeking monetary damages against Defendant Goord in his official capacity is barred by the Eleventh Amendment. See Aiken, 236 F. Supp.2d at 226-28 (citing Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100-01 (1984); Jones v. New York State Div. Of Military & Naval Affairs, 166 F.3d 45, 49 (2d Cir. 1999); Kostok v. Thomas, 105 F.3d 65, 68 (2d Cir. 1997); Trotman v. Palisades Interstate Park Commission, 557 F.2d 35, 39 (2d Cir. 1977); Baird v. New York State Exec. Department, 1998 WL 690951 * 2 (N.D.N.Y. September 28, 1998)).

Second, any claim for damages against Defendant Goord in is individual capacity must be dismissed because Plaintiff fails to present any evidence of Commissioner Goord's personal involvement in the application of the challenged DOCS employee regulations to Plaintiff. It is axiomatic that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087

12

(1978); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  To establish personal liability against a government official for a constitutional violation, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "Personal involvement" of a supervisory official may be established by evidence of: (1) direct participation in the alleged constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed the unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring. Colon, 58 F.3d at 873.

Plaintiff asserts in broad, conlcusory fashion that Defendant Goord must have been involved in implementing the employee regulations in issue, and must have been advised of Plaintiff's discharge, because Goord is the "chief executive officer of the Department of Correctional Services with direct supervision and control over all New York Correctional facilities."  Pl. Mem L. in Opp., p. 19.  However, "[t]he bare fact that [Goord] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim." Colon, 58 F.3d at 874.  Plaintiff's conclusory allegations as to Goord's involvement do not create a question of material fact sufficient to withstand summary judgment. See Collins v. Goord, 2006 WL 1928646, at * 15  (S.D.N.Y. July 11, 2006)(Dismissing § 1983 claim where, "[a]side from the entirely conclusory allegation that . . . Goord [was] 'aware of and acquiesced to the unlawful practices,' [plaintiff] offers no factual allegations against Goord, assuming, erroneously, that his mere status as DOCS Commissioner is enough to sustain this claim.").

13

Accordingly, Defendant Goord is entitled to summary judgment dismissing all claims for monetary damages against him.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED** and the action is **DISMISSED.** Plaintiff's cross-motion for summary judgment is **DENIED**.  The Clerk of the Court is directed to enter judgment in defendants' favor and close the file in this matter.

**IT IS SO ORDERED**.

DATED:  August 10, 2006

Thomas J. McAvoy
Senior, U.S. District Judge

14